**HENDERSON et al. v. WELCH DRY KILN CO., Inc.**

No. 5529.

Circuit Court of Appeals, Fifth Circuit.

April 10, 1930.

John D. Miller, of New Orleans, La., and Eugene A. Thompson, of Syracuse, N. Y., for appellants.

John E. Jackson, of New Orleans, La., and Merton W. Sage and Dean S. Edmonds, both of New York City, for appellee.

Before BRYAN, Circuit Judge, GRUBB and BORAH, District Judges.

GRUBB, District Judge.

This is an appeal from a final decree of the District Court of the United States for the Eastern District of Louisiana, holding claim 4 of the Henderson patent, No. 1,-422,202, for improvements in dry kiln, not infringed by the dry kiln structure of the appellee, the Welch Dry Kiln Company, and dismissing the appellants' bill of complaint. The appellee (defendant) denied infringement, alleged invalidity, and pleaded estoppel by conduct in bar of appellants' (plaintiffs) suit. The appellee's kilns were built under patent No. 1,517,928, the Welch patent. The District Judge found it unnecessary to decide any issue except that of in-

fringement, and our conclusion leads to the same result.

Claim 4 of the Henderson patent reads: "A dry kiln having a circulating passage having an inlet into the interior of the kiln, an air inlet communicating with the circulating passage and with the outside of the kiln, and an outlet into the kiln, and a steam blower arranged in the circulating passage between said inlets and said outlet in position to recirculate the atmosphere of the kiln and also draw in air through the air inlet and humidify the same, substantially as and for the purpose described."

■ Claim 4 is analyzed by appellant to include: (a) A dry kiln having a circulating passage inlet, having an inlet into the interior of the kiln; (b) an inlet communicating with the circulating passage and with the outside of the kiln; (c) an outlet into the kiln; and (d) a steam blower in the circulating passage between the inlets and outlets in position to recirculate the atmosphere of the kiln and draw the air through the air inlet and humidify it. None of the elements are novel. It is their combination that appellant relies upon for novelty; and they must in combination produce a new and useful result. In view of the state of the prior art, as evidenced by the Rubin, Emerson, and Cutler patents, and the documents of Brownlee, the Henderson patent made a slight advance, and should be narrowly restricted. Being a combination patent and not a pioneer patent, in order for infringement to exist, even though the elements are the same in the infringing device, the result accomplished and intended must likewise be substantially the same. Although there be a similarity of structure, if there is a functional difference, and the results obtained from the combination substantially differ in the two devices, no infringement can exist. It is necessary to determine whether or not there are functional differences which bring about differing results, to decide the issue of infringement.

In dry kiln practice, kilns are divided into progressive and compartment. In the former, the entering or green end is warm and humid; the dry or leaving end is hot and dry. The lumber enters the warm humid end, moves a certain distance each day toward the dry end, until it is reached. A current of air moves continuously from the hot, dry end toward the green end. The purpose of the circulating passageway is to carry the excess moisture laden air to the dry end from the green end and the excess heat

laden air from the dry end to the wet end. This requires a longitudinal circulation and circulating passage, in order to carry varying temperatures and humidities to the different stages of the drying process throughout the length of the kiln; the minimum being one hundred feet. On the other hand, in the box or compartment kiln, the lumber remains stationary until the process of drying is completed. The box still is much shorter and there is no longitudinal circulation required in the drying process. The aim is not to carry the excess heated air from the dry to the green end and the humid air the opposite way. In box kilns there is no need for variable temperatures and humidities, as the process progresses by daily stages along the length of the kiln. On the contrary, the lumber remains during the process where it first entered the kiln. The aim is to make the heat and humidity at the same time uniform throughout the entire kiln, as distinguished from variable. This is accomplished by a transverse circulation of moisture and heated air rotated from the center of the lumber as stacked in the kiln, and passing through it to the left and right across half of the width of the kiln and returning thence to recirculate through the passageway. The difference between the directions of the circulations in the two types is not accidental, but is in response to a different function and purpose. The requirement of simultaneous uniform temperature and humidity throughout the box still calls for a transverse circulation. The requirement of variable temperatures and humidities throughout the length of the kiln to correspond with the daily stages calls for a longitudinal circulation which will distribute the heat and moisture in gradually increasing and decreasing quantities along the length of the kiln according to the needs of the lumber in its daily progression from the green to the dry end of the kiln, where the drying process is finished. The difference of direction in the circulating passage was therefore due to a difference in function, and in result, and is not merely colorable. The appellants' patented device carried a transverse circulation through the entire kiln and the lumber in it through many parallel passageways, and accomplished, or purposed to accomplish, a uniform temperature and humidity throughout the entire kiln at one and the same time. The appellee's alleged infringing structure constructed pursuant to the Welch patent, carried two conduits running longitudinally from the green to the dry end of a progressive kiln, which were intended to distribute the excess moisture from the green end toward the dry end and the excess temperature from the dry end to the green end so as to provide over the different stages of the drying process variable temperatures and humidities, increasing in dry heat, stage by stage, toward the dry end, and in moisture approaching the green end.

■ Appellants' patent, with a transverse circulation, differs functionally from Welch's structure with its longitudinal circulation, and there is no infringement. The Patent Office took this position in issuing the Welch patent, in requiring the appellee to limit two of its claims in seeking to patent its alleged infringing device to progressive kilns. It is true that claim 4 of the appellants' patent is not limited to compartment kilns. However, its specifications and drawings include a transverse circulation, and as applied to progressive kilns, a longitudinal circulation is an improvement on the Henderson patent, and is not covered by it, as was recognized by the limitation by the Patent Office of Welch's patent to progressive kilns. The Henderson and Welch both use an injector in the circulating passage. Henderson's device positions it between the inlets and outlet into the kiln, its function being to draw in the outside air and mix it with the return current from the kiln, and carry both back into the kiln. Welch has a separate device to draw the air into the passage, and uses the injector to increase the velocity of the current as it circulates through the conduit. The use of an injector is old, and unless the function was identical, it would furnish no basis for infringement. That it incidentally contributed to draw in the air would not make it infringing.

We think the question of infringement was decided against appellants by us in the case of Gilchrist-Fordney v. Welch Dry Kiln Co., 33 F.(2d) 117. Appellees' alleged infringing device was assailed under the Welch patent (No. 1,517,928), and in the case cited, was sustained as valid by this court, though as against its validity, the Henderson patent here in suit was cited as showing anticipation in the prior art. In spite of the citation, the court said at page 117 of 33 F. (2d): "The improvement covered by the Welch patent consists principally of a by-pass conduit running from the green end along the bottom of the kiln and connected with a fresh air intake at the green end. Its function is to increase and improve longitudinal circulation. To accelerate the circulation, steam jets of small diameter are

placed about midway of the kiln. We entertain no doubt as to the validity of appellee's patent. The use of by-pass conduits and steam jets to improve circulation was unknown in the prior art, and their addition to progressive kilns constituted a new and useful improvement, greatly improving the process of drying lumber in such kilns and increasing the value of the finished product." The court sustained the validity of the Welch patent in the particulars complained of here as infringing as to progressive kilns, as against the Henderson patent, which preceded it, and was introduced as evidence to show its invalidity. If the Welch patent is valid as to progressive kilns, as against the Henderson patent, then Welch's structure based on its patent has already been held not to infringe the Henderson patent by this court.

The decree dismissing the bill was correct and is affirmed.